Good morning, and may it please the Court. John Mastin for the appellant, Parkson Corporation. I would like to reserve two minutes for rebuttal. Go to the clock in front of you, just keep track of that. Thank you, Your Honor. This is a contract case. Rigby is suing Parkson to enforce the three-page performance guarantee contained in the record at ER 75 to 77. Rigby's breach of contract claim against Parkson should be sent to arbitration for two reasons. One, Rigby's agreement to arbitrate is found in the plain language of the performance guarantee, the contract Rigby is suing to enforce. Reason number two, under the doctrine of estoppel, Rigby is precluded from claiming the benefits of the performance guarantee while simultaneously attempting to avoid the burdens of that same contract. Turning to reason number one. They're not mutually exclusive. I mean, those are reasons that go in tandem, right? They're not reason number one independent of reason number two. Reason number one, Your Honor. You need number two to make number one work. Necessary, Your Honor. We don't believe you necessarily need to go to the doctrine of estoppel, because Rigby was a party to the performance guarantee. I don't understand that, so I'd like you to explain that to me. I understand your second argument, but I don't understand your first one. Rigby, what did Rigby do to indicate its agreement to this performance guarantee? They never signed it, never affirmatively said, oh, we like it. I understand it later sued on it, but that's your second point. Tell me how Rigby became a party to this contract. I understand the language in it is clear. Much of your brief is devoted to that, but tell me how did acceptance occur? It accepted it and the district court specifically found in the record at ER 9, quote, on August 15th, 2008, Keller Associates, the engineer for the project, reviewed and approved Parkinson's submittals for the filtration system. And then if you go to ER 36, Your Honor. Well, that's the system. Tell me where they approved the guarantee. The performance guarantee, it is undisputed, was included in the submittals. That's in the blue brief on page 6. We explain that the performance guarantee was included with the submittal, and that is undisputed by the other side. But they never acknowledged, signed, or otherwise attested to their agreement to it. The city's representative, which is explained on ER 36 in the record, the city's representative, Keller Associates, reviewed and approved in writing the submittals which contained the performance guarantee, the exact same performance guarantee that is included. And did what with this? Sent it back to Parkinson or sent it to Peck or put it in a drawer or what? They sent it back. You have to, in the construction process, the submittals are approved, sent back to the general contractor, Peck Hornsby Construction. Peck Hornsby then sent it to Parkinson. Parkinson, in reliance upon that approval, then manufactured the filters and sent them to the job site. Can you explain to me the district court's discussion, which doesn't, isn't much reflected in the briefs, about all this UCC material and the notion that there was a pre-existing duty and why that matters and so on. It really, it just seemed to come out of left field and I don't understand what it's about. Yes, Your Honor. And the pre-existing duty rule we don't think is applicable here. What the district court was referring to is that Parkinson had an obligation to provide the performance guarantee. And the district court then went to that existing obligation and said, well, under the pre-existing duty rule, then the district court attempted to tie it to the MBNA bank case and said, since you had an obligation to provide the performance guarantee, you cannot unilaterally insert an arbitration agreement into that contract. But there was no obligation to provide it in any particular form. Exactly. That's our argument, Your Honor. And the MBNA case involved insertion of something after a contract was signed. Right. It involved inserting an arbitration provision in an existing bank cardholder agreement. Here there was no existing agreement between Parkinson and Rigby to be amended. And so the pre-existing duty rule in the UCC discussion is not applicable here. I want to go back, just so that I understand it, to your argument that the city actually accepted the guarantee. As I read the record, it seemed to me what happened was that the specifications were given for the filters to the engineer, along with a form of the guarantee, and he said the submittal is fine. Does that really mean that they accepted the guarantee, or does it mean that they accepted the specifications for the filters? The entire submittal package, Your Honor, including the performance guarantee, was accepted without exception and approved and sent back. Were you required to submit the guarantee at the time? Who required you to do that? Paxton. Well, it was required in the specifications, section 11-520, where it spells out what's got to be included in the submittals. It specifically mentions the performance guarantee has to be included in the submittals. And in fact, the first submittal package did not include the performance guarantee. In fact, the first submittal package did not include the performance guarantee.  And it's undisputed that the district court found that Keller, the city's representative, city engineer, approved the first submittal package and said, hey, we're still looking for the performance guarantee. Where's that in the record? ER-9 is where it's in the record that the district court specifically found that Keller's in the submittal. And it's undisputed that that submittal contained the performance guarantee. Now, the district court doesn't say that it approved the guarantee. It says it approved the submittal. I'm trying to find out how I find out what was in the submittal. Where in the record is that? You go to the blue brief, page 6. Blue brief, page 6, we explain what was included in the submittal, which was the performance guarantee. Yeah, but it's a brief. Tell me where in the record I find it. In other words, where in the record can I verify your statement? I understand the district court says the submittal was approved. Right, right. Where can I find that the submittal included the guarantee? That is in the record after the notice of appeal was filed, after the notice was filled. Are there other excerpts of record there? Yes, sir. Why don't you look at it? This is Second Amendment complaint, paragraph 14. Or you can do you can do. You can find a page number and tell us where to look, and then we can look at it at the same time. Or if you'd like to, and save it for rebuttal and tell us then. I'd just like to know where it is in the record. Yes, sir, Your Honor. The excerpt of record does not include anything over and above ER-9 where they said the submittals was approved, because the district court did not stay discovery, and we deposed the engineer. If it's not in the excerpt of record, is it otherwise in the record? Yes, it's in the district court's record, Your Honor. From what I can see Where is that in the district court's record? I'll get that citation for you and give it to you on rebuttal, Your Honor. Where we were In the district court opinion, it says, there's a parenthesis, and it says, SAC paragraph 14, from which I take it to mean that this is taken from the Second Amendment complaint paragraph 14. Yes, Your Honor, that's correct. And that may be all there is. I mean, it's just a complaint. Is that possible? That's all there is up until the time the notice of appeal was filed. After the notice of appeal was filed, the city's engineer was deposed, and the city's engineer and the submittal package, including the performance guarantee, is in the record after the notice of appeal was filed with his signature that he approved the performance guarantee in writing. But why was there discovery after the appeal? We filed the notice of appeal and moved to stay, and the district court Because the main litigation was still going on between Pack and the city. Yes, Your Honor. And No, I see. Because it was an arbitration order, so it was appealable. Exactly, Your Honor. And so discovery went forward, and we deposed the city's representative at that time. If it were in the Second Amendment complaint, would that be sufficient for present purposes as to the arbitration order? Presumably, yes. Yes, Your Honor. I'm sorry. We believe it would, and especially because the opposing side didn't address it in the brief and has conceded that issue. On estoppel, if I could address estoppel, please, Your Honor. In Comer, this Court held that the doctrine of estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. That is exactly what Rigby is trying to do here. Rigby should be estopped from claiming the benefits of the performance guarantee while simultaneously attempting to avoid the arbitration clause in that performance guarantee. An international paper, the Fourth Circuit case that the panel asked us to also look at, is on all fours with that. And the Fourth Circuit held an international paper, quote, A non-signatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause. And that is what is happening here. Rigby is suing to obtain a direct benefit. Roberts. This is a little different than an international paper in the sense that in that case the party that didn't want to arbitrate was suing on the contract of somebody else, who was a non-signatory and who was a contract to somebody else. Right. Here, it's slightly different. I think the principle may still apply, but it's not really on all fours, is it? Well, Rigby is one that's suing. Rigby is suing Parkson. Parkson has no claim against Rigby. Rigby is suing Parkson to enforce the performance guarantee. Here, it's a little bit different because under the plain language of the performance guarantee, Rigby is a party to that contract. So you have a party non-signatory, Rigby, suing another party non-signatory, Parkson, to enforce the terms of a contract that's got a plain and unambiguous arbitration clause. I don't mean to get you off track. In the international paper, they were really suing someone as a third party beneficiary. Right. And here, that's important that Rigby is not suing as a third party beneficiary, which goes to my first argument, that if Rigby was not a party to the performance guarantee, it couldn't bring a direct breach of contract claim against Parkson as it has. This Court, under the recent Kramer v. Toyota case, must also look to the applicable State law under the estoppel question. Here, the applicable State law is Florida because the parties agreed in the performance guarantee that Florida was the controlling law. But Florida is exactly the same as Kramer and the Ninth Circuit. Under Florida law, a party may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims. And it's important to note that here Rigby is not acting in its sovereign capacity. Rigby is suing a private party under an ordinary contract. Thank you. Kimberly Evans Ross. And I'm appearing this morning as a representative of the city of Rigby. The issue in this case is narrow and it's based on a set of largely undisputed facts that are pretty simple. It starts with the city of Rigby entered into a contract with Peck Ormsby. It's a general contract. Under the terms of that contract, the city of Rigby secured for itself the right to receive a performance guarantee. Peck then contracted with Parkson under a subcontract agreement. Under the subcontract agreement, the city of Rigby has the contractual right to receive a performance guarantee. As a result of that second contract, Parkson contractually obligated itself to provide the performance guarantee. At this point, the facts are that the city has the contractual right to receive the guarantee. Parkson has the contractual obligation to provide it. But not to you. But to the city. It is to provide it to the city. Its contractual obligation to provide it is to Peck. It modifies the general contract to say we don't have any obligation to the city to provide this. We have an obligation to you, Peck, to provide it. Right. That is correct. Parkson is obligated under its contract with Peck to provide a guarantee to the city. And I think we understand all that. So here's the two questions that I think you need to answer. And let me start with the first one. You get this performance guarantee is given to your representative. Correct. Whether or not he says it's dandy or not, nobody complains about it. Several years later, you think something is wrong with the filters and you sue on the guarantee. Under the given that set of facts, undisputed, how do you get out a part of the guarantee but claim the other part still applies? As I mentioned, Rigby was had secured for itself the contractual right to receive it. So when it received the guarantee, you know, in terms of what the city engineer was looking for, it's on his list of things to receive. He gets a submittal. It has a bunch of contract engineering forms and it's got a document that's called performance guarantee. And he says, okay, we got it. And I'm willing to believe that's not an acceptance for purposes of the moment. But you get this. Nobody ever complains. It shows up several years later. Some time later, you decide the filters are no good and you decide to sue on the guarantee. You don't say at that time, you know, Peck, you broke your contract with us. You gave us a bad guarantee. We're suing you. You sue on the guarantee. Once you sue on the guarantee, aren't you accepting it? Absolutely not. Why not? Because we didn't agree to the provisions that we didn't contract for. Then it says you didn't have a meeting of the minds with respect to that guarantee. That is exactly the case. So the guarantee is no good. Could you sue for a 5-year guarantee? Pardon? Could you sue for a 5-year guarantee? It's a 3-year guarantee, I think, or whatever the term is. Could you sue for more time? We didn't agree to 3 years. We're suing for 5 years or 10 years or a lifetime guarantee. Could you do that? No. The city's position is that it agreed to receive a performance guarantee. It was entitled to receive one. Why don't you answer my question? No. I mean, the ---- Okay. So you can't vary the term, right? You're bound by whatever the term of the guarantee is, even though you didn't You arguably didn't consent to it. Why aren't you bound by every other term of the guarantee? If you want to sue on it, you're bound by its terms. If you want to sue your contractor for not providing an adequate guarantee, you can do that. But if you sue on the guarantee, why aren't you bound by every term, including the time limit and whatever else is in there? Okay. The argument would be that the city was entitled to receive a guarantee. Any other terms that are in there ---- That's actually just a question. You know, it's not a chance for you to sort of orate. I ask you a question. Why are you not bound by all the terms of the guarantee? The city's not bound by any of the terms in the guarantee other than the guarantee itself. Why? That's what it was entitled to have and what it ---- Why? That is what it agreed to. Why is that? The cardinal rule of arbitration agreements under the FAA is that they have to be mutually agreed to. Did you hear my question? Yes, Your Honor, I did. When you hear a question, it is your chance to sort of say anything you want. But it's really not. It's really a chance to listen to what the question is and answer the question. If you want to sue on this document, which is a guarantee, why are you not bound by all the terms of the guarantee? You're not happy with this guarantee. You can sue your contractor for saying, look, you provide this lousy guarantee. You can sue your contractor and say, we sue you for providing us a lousy guarantee. But if you choose to sue on the guarantee, why are you not bound by everything in the guarantee, every word that's in it? If the question is difficult for me to answer, let me see if I can put it in a context where I'm trying to make it more clear to you. Any party can sue on its own contract. Any party can sue on its own contract and challenge certain terms if the terms are in there without the agreement of both parties. Well, I think that's precisely the question. So let me see if you're saying we didn't have a meeting of the minds. That's correct. But I get to enforce the parts of the contract that I like, but not the others don't apply. Okay. That is your position, isn't it? Yes. And let's not confuse the two situations between when I'm a party suing on a contract and when I'm not. Why don't you lose? Because it seems like a totally absurd position. The city of Rigby is entitled to have a performance guarantee. Go to your contractor. Sue your contractor and say, we're entitled to a performance guarantee. You didn't provide one. What you provided was lousy. We don't like it. We're not going to sue on it. We're not going to go. You know, you are our guy we contracted with, and you stand behind it. The city is the named recipient on that performance guarantee. But the requirement that there be a performance guarantee spell out at all what was supposed to be in the performance guarantee. No, it doesn't. No, it doesn't. So what's so terrible about – let's accept your argument for a second. Let's accept that you can pick and choose on some basis. What's so terrible about somebody putting an arbitration clause into a construction-related contract? They're there all the time. They're perfectly standard clauses. You didn't – nobody said, hey, wait a minute, take this one back and take the clause out of it. So why should we, under that circumstance, allow you to pick and choose? There's nothing inherently evil about an arbitration clause. When parties agree to it, they should be enforced. That's the law. Scalia. I'd understand if it had a restrictive covenant in it that said, you know, this arbitration – this guarantee may not be enforced by anybody except a person of the white race. I could see how we would sever that clause because it was illegal. But there's nothing illegal about the arbitration clause. No. But it's also not consented to, and this is why. Well, why can't they say, look, we didn't consent to a – to give a warranty that doesn't have an arbitration clause. You're making us provide a warranty on terms that we did not contract for. What we agreed to provide was a warranty that includes certain terms, including the number of years the warranty is good for and the method of enforcement. Well, how do you go binding them to terms that they never agreed to? The principles of State contract formation are that somebody gives you an acceptance and an offer, an offer to contract, and then you accept. When Parkson tendered the contract to you, you said you were a third-party beneficiary here. You're not – according to your theory, you're a third-party beneficiary. No, not at all. We are a party to that contract. We are a party to that contract. Parkson sent you a performance guarantee. The – if, for example, the performance, part of the performance, the merits, the substance had said, but we're not covering, you know, any labor problem, any problems with the labor only with the manufacturer, you presumably would have read it and either – and if you didn't reject it, what, you would have accepted it? Would it have been – would that exception have applied? It would have been rejected. Here's what happened. Well, but it might well have been rejected, but that's the question. Parkson said, the only way we're willing to guarantee this stuff is if you agree to arbitration. That's a fair reading of their guarantee, is it not? It may have been. I think that that is one fair reading. That's exactly what it says. We'll guarantee it subject to any dispute. So why do they – you say, well, I'll take your guarantee, but not your arbitration. Under that circumstance, wouldn't Parkson have been entitled to say, well, to heck with it, we're not going to provide these filters? They could have, but the way it came in, the city was never given that opportunity. Well, but neither was Park – neither was Parkson. See, I can – your argument suggests to me that there's no meeting of the minds at all and that the guarantee is no good, but I'm sure that's not the position you want to take. That is not our position. The city of Rigby accepted the guarantee of performance. You said the engineer checked it off as a warranty. This document is not in the record, okay? What you see is the city engineer looking at the submittals, the engineering designs and saying, okay. Floppy is what you're saying. The engineer – this is not in the record. The engineer actually stamped the copy of the arbitration agreement that it looked at and it had language of reservation that says, I'm an engineer. I'm just looking for whether there's a performance guarantee. I mean, take my hypothetical. You say it would have been rejected. It would have been rejected if somebody noticed it and rejected it. Correct. But if nobody noticed it and rejected it, which is what happened here, presumably it would have been applicable. No. The general rule is that silence is not an accepted – is not an okay means of acceptance for a contract term. So they could sue on it later and say that exception doesn't apply? We get not just parts. We get parts and labor. Whoa. There's lots of warranties out there, I guess, that I don't agree with. I've already argued them. If they have these warranties that say 90-day parts and labor, and after that it's just parts. Can I just say I didn't agree to it? I get parts and labor? Well, there's different ways that you can go about assenting to a proposed contract term. In this case – I do none of them when I buy a consumer item. I try to not look at it too closely, because if I read it, I'm bound. And the difference between the city of Rigby and your example is the fact that the city of Rigby was expecting to get a performance guarantee. It had contracted for the right. So they have an engineer looking it over. Why don't they have a responsibility to say, look, the engineer sends it over to the lawyers? The city – this is a big contract. It involves tons of money. And the engineer checks to see whether there is a warranty. Yes, he checks that. But he's not a lawyer, and so he has an obligation to send it to a lawyer, who then goes over it and decides whether or not there's something – why isn't that a sort of a – Under the construction contract, if Parkson submitted something that was not in substantial compliance with one of the specifications, it was supposed to call it out in its submittal so that it would be drawn to the engineer's attention. This is something new. This is a new term that isn't covered. This is whatever. And it didn't. That's a very good argument as to why – it may not be a good argument, but it's a viable argument about why Peck broke its contract with you. But I'm still not sure I've – and maybe there isn't a good answer. I'm not sure why I've heard a good answer on how you can bind – you can bind Parkson to some of a – some of a contract, but Parkson can't bind you to the rest of the contract. Parkson had an obligation to provide a performance guarantee. Anything it wanted to add beyond the guarantee itself. Anything it wanted to add beyond the guarantee itself. As I said before, the district court opinion seems to be on a quite different ground. You're not defending that ground. Is that correct? I do think it applies in this case. What Judge Shub found was that because Parkson had a preexisting duty to provide the guarantee, that anything else it wanted to add to that contract other than the guarantee itself was a modification of its existing obligation. And when you modify the terms of an existing obligation, either the other side has to fully assent or you have to do it – you have had to have the right to unilaterally modify it in your original obligation. Judge Shub back – The only obligation they had to Rigby, to the city, is this document. There is no other obligation. No. Judge Shub went back to the subcontract, because that's the contract that obligated Parkson to provide the guarantee. And to the city. Pardon? There was no other contract with the city. This – it was just this one. Well, that's the triangular relationship of the parties, is that there's a prime contract that has specifications that requires the performance guarantee, and then there's a subcontract, and then Parkson performs, tenders performance of its subcontract by tendering the guarantee to the city of Rigby, but by adding a whole bunch of substantive contract provisions that the city never had the opportunity to agree to. But it did have the opportunity. That's what's wrong with your argument. You could have just sent this back and said, well, this isn't it, we're not doing it. If Parkson had called out in its submittal that it was including a bunch of contractual provisions that materially altered – This is like Miranda? Yeah. No, this is – this is typical. We have to give them warning, you know, we – you know, with a – This is typical of construction contracts. You know, the – If you're dealing – if you're dealing with sophisticated parties in a construction contract, why can't you rely on the site, read the documents, and if they need to get lawyer's advice, hire lawyers and, you know, that's supposed to sort of treat the city as if it were a suspect in a – in an arrest? Well, it's – it's unfortunate that this document didn't make it into the record. There is a copy of the performance guarantee, but there's not a copy of the performance guarantee that actually has the stamp from the engineer saying, I'm only looking at specifications here. I'm not making any representations with regard to the rest of the content. But Parkson communicated it, so it's mainly irrelevant. I mean, as far as the party knew, they were going ahead and performing on the – with the fair understanding that their performance guarantee in total had been accepted. And in fact, then you sued on it. If they looked at the mark – if they looked at the stamp that the engineer put on that performance guarantee, they would know that it happened. There was no acceptance by the engineer of the arbitration provision. And maybe we've reached the end of productive discussion on this, but Judge Berzon's question was different. Her question was, the other side submitted this guarantee thinking it complied with the contract. It went ahead and provided the filters, did everything. You're now – we're now at the end of the day and you're saying, well, I'm willing to take some of what you gave me, but this really wasn't the guarantee we asked for. That's a good argument about why there was a breach of contract by Peck, and maybe Peck has a claim against Parkson. But I'm not sure you get to sue on the guarantee. That's what's troubling us. I'm not sure you get to sue on the guarantee under those circumstances. Kennedy. What was the stamp sent to the person? With the engineer's reservation of language, yes, as I understand it, that was what was sent back. As I understand it, that means you don't know. There is nothing in the record that would indicate to you that the engineer actually looked at the performance guarantee and reviewed it and accepted its terms. That document isn't there. Now, if it were there, it would have reservation language. That's a different question. The question is, was there anything sent back saying, we haven't looked at this and we haven't accepted the terms because I'm just a stupid engineer? The city was silent. It didn't realize that the provision was in there. So your answer to my question is no. Correct. There was no response. They were unaware of it. They were surprised by it when they finally learned of it, because it had only gone to the engineer, which is typical in construction contracts. It sounds like an important lesson for the city. The next time they put an engineer on something, they ought to tell them, you forgot it's wrong. You don't understand, send it to a lawyer. That's why we hire lawyers. Well, in the contract documents, in the construction contract, it says if you're going to put something unusual, if your submittal has something other than precisely what's called out in the contract, you have to call it out in your submittal. Oh, by the way, what I'm submitting is nonconforming in the following respects or has additional terms in the following respects. That only would make sense if there were a description of what is a performance guarantee. Presumably, the performance guarantee, unless told otherwise, could include we guarantee this, but if you want to so on it, you have to arbitrate. And why isn't that part of a performance guarantee unless somebody tells you it isn't? Silence is an effective way to accept contract terms unless everybody understands that the failure to object constitutes acceptance. I think we understand your position. Okay. Your seven minutes are over. Thank you. But it's our fault. The district. Did you have any time left? Were your negative numbers? We'll give you a minute for rebuttal. Thank you, Your Honor. The district court docket number is 128-6 on the submittal review, so showing that the performance guarantee was included. The engineer's tech. This is 128-6 is what? In the district court docket number 128-6 is the. 128 is the docket number, isn't it? 128, yes, sir. And it's. It's not in the excerpts. Correct, Your Honor. Because, as I explained earlier. Just to make clear, this is part of the record that was made after the notice of appeal? Yes, sir. You ask where it appeared, just showing the. Just to make clear, so this was not before the district court when it made its ruling? Correct, Your Honor. And you didn't at that point say to the district court, we've got something new, reconsider your arbitration rule? No, Your Honor. Okay. I'm sorry, Justice Breyer. I just want to make sure. I was just repeating that. Yes, yes. The bottom line is Rigby cannot pick and choose which terms in the performance guarantee it wants to abide by. And as the Fifth Circuit summed it up, the doctrine of a stopper prevents a party from having it both ways. And. That's pretty much what the doctrine of a stopper is. Yes, Your Honor. And. Thank you. Thanks. Mr. Target will stand submitted.
judges: Kozinski, Berzon, Hurwitz